1
2
3                        UNITED STATES DISTRICT COURT
4                             DISTRICT OF NEVADA
5                                    * * *
6    WILLIAM BRYON LEONARD,                    Case No. 2:99-cv-0360-MMD-DJA
7                            Petitioner,
8         v.                                             ORDER
9    WILLIAM GITTERE, *et al.*,
10                          Respondents.
11
12   **I.    SUMMARY**
13         Petitioner William Byron Leonard filed his first amended petition for writ of habeas
14   corpus with leave of Court. (ECF Nos. 138, 184.)[1] Respondents have filed a motion to
15   dismiss (ECF No. 151), arguing that Leonard's habeas claims are untimely, unexhausted,
16   procedurally defaulted, not cognizable and/or not ripe in this proceeding. In conjunction
17   with his opposition to the motion to dismiss, Leonard asks for leave to conduct discovery
18   and an evidentiary hearing. (ECF Nos. 188, 190.)[2] For reasons that follow, the Court will
19   grant in part and deny in part the motion to dismiss and deny Leonard's motions for
20   discovery and an evidentiary hearing.
21
22         [1]Leonard's first amended petition, filed on March 19, 2018 (ECF No. 138), contains
23   numerous claims that do not follow a sequential numbering scheme. On September 25,
     2019, Leonard filed a corrected image that remedied that flaw. (ECF No. 184.)
24   Hereinafter, the Court cites primarily to the latter document when referring to Leonard's
     first amended petition.
25
26         [2]The Court has considered Leonard's response to Respondents' motion to dismiss
     (ECF Nos. 186, 187) and Respondents' reply (ECF No. 202). The Court has also
27   considered the responses (ECF Nos. 200, 201) and replies (ECF Nos. 203, 204) relating
     to Leonard's motions.
28

1

## II.   BACKGROUND

2      In August 1989, a jury in the First Judicial District Court for Nevada found Leonard

3   guilty of first degree murder with the use of a deadly weapon, battery with the use of a

4   deadly weapon by a prisoner, and possession of a dangerous weapon by a prisoner.

5   (ECF No. 155-14.) In the penalty phase of the trial, the jury found both aggravating factors

6   alleged by the State: (1) the murder was committed by a person while he was under a

7   sentence of imprisonment, and (2) the murder was committed by a person who was

8   previously convicted of another murder or of a felony involving the use or threat of

9   violence to the person of another. (ECF No. 155-38.) The jury also found two mitigating

10   factors: (1) the victim was a participant in the defendant's criminal conduct or consented

11   to the act, and (2) at least one of the aggravating factors was committed while the

12   defendant was under the influence of drugs or alcohol. (*Id.*) Finding the aggravating

13   factors outweighed the mitigating factors, the jury imposed the death sentence. (*Id.*)

14      A judgment of conviction was entered on August 29, 1989. (ECF No. 156-1.)

15   Leonard filed a motion for a new trial that was denied. (ECF Nos. 156-22, 157-3, 157-28.)

16   He then appealed his conviction. (ECF No. 157-33.) In January 1992, the Nevada

17   Supreme Court affirmed Leonard's conviction and sentence. (ECF No. 158-15.) After the

18   Nevada Supreme Court denied his petition for rehearing (ECF No. 158-19), Leonard filed

19   a petition for writ of certiorari in the United States Supreme Court (ECF No. 158-25). That

20   petition was denied. (ECF No. 158-31.) The Nevada Supreme Court issued remittitur on

21   September 21, 1992. (ECF No. 159.)

22      On September 2, 1992, Leonard filed his first petition for writ of habeas corpus with

23   the state district court. (ECF No. 158-36.) With the assistance of counsel, Leonard filed a

24   supplemental petition. (ECF No. 159-17.) After holding an evidentiary hearing, the district

25   court denied relief. (ECF Nos. 160-15, 160-16, 160-17, 160-18, 160-19, 161-23.) Leonard

26   appealed. (ECF No. 161-25.)

27

28

In May 1998, the Nevada Supreme Court affirmed the state district court's decision. (ECF No. 162-18.) Leonard filed a petition for writ of certiorari in the United States Supreme Court, which the Court denied. (ECF Nos. 163-1, ECF No. 163-9.) The Nevada Supreme Court issued remittitur on March 10, 1999. (ECF No. 163-11.)

Leonard initiated this federal proceeding on March 25, 1999. (ECF No. 1.) This Court appointed Richard Cornell to represent Leonard, with the Federal Public Defender appointed as second counsel. (ECF No. 7.) Respondents filed an answer to Leonard's initial petition, which included the assertion of procedural defenses to a number of claims. (ECF No. 51.) At the direction of the Court, Respondents filed a supplement to their answer in May 2006. (ECF Nos. 77, 81.) Respondents argued that Grounds 15, 16, 17, 18, 19, and 23 of Leonard's petition were unexhausted. (ECF No. 81 at 1.) Leonard agreed that Grounds 15-19 had yet to be exhausted. (ECF No. 86 at 6-7.) On July 19, 2006, this Court found Grounds 15-19 and 23 unexhausted and ordered Leonard to abandon his unexhausted claims or file a motion for stay. (ECF No. 86.)

Leonard moved for stay and abeyance, which Respondents did not oppose. (ECF Nos. 87, 88.) On September 25, 2006, this Court granted Leonard's motion to stay these proceedings. (ECF No. 89 at 4.) On October 18, 2006, Leonard filed his second state habeas petition. (ECF No. 162-21.) The district court dismissed Leonard's second state petition on procedural grounds. (ECF No. 164-16.) Leonard appealed. (ECF No. 164-18.) The Nevada Supreme Court affirmed the state district court's dismissal. (ECF No. 165-7.) Leonard filed a petition for writ of certiorari in the United States Supreme Court, which the Court denied. (ECF Nos. 165-15, 165-19.) The Nevada Supreme Court issued remittitur on October 13, 2010. (ECF No. 165-20.)

Instead of moving to lift his federal court stay, Leonard filed a third state habeas proceeding on January 7, 2011. (ECF No. 165-26.) Once again, the state district court dismissed Leonard's petition on procedural grounds. (ECF No. 166-11.) Leonard appealed. (ECF No. 166-13.) The Nevada Supreme Court affirmed the district court's

dismissal. (ECF No. 166-33.) Leonard filed a petition for writ of certiorari in the United States Supreme Court, which the Court denied. (ECF Nos. 167, 167-5.) The Nevada Supreme Court issued remittitur on October 11, 2016. (ECF No. 167-6.)

In December 2016, this Court reopened these proceedings and entered a scheduling order that allowed Leonard 60 days within which to file an amended petition. (ECF No. 120.) Leonard then filed, in succession, a motion for leave to supplement petition for writ of habeas corpus (ECF No. 121), a motion to re-impose stay (ECF No. 124), and a motion for extension of time to file first amended petition pending resolution of motion to re-impose stay (ECF No. 127). The Court denied Leonard's motion to re-impose stay but permitted him to supplement his petition. (ECF No. 129.) Leonard filed a motion for reconsideration of that decision that the Court denied. (ECF Nos. 130, 133.)

On March 19, 2018, Leonard filed his first amended petition. (ECF No. 138.) In response, Respondents filed the motion to dismiss now before the Court for decision. (ECF No. 151.) As noted, Leonard opposed and filed motions for conduct discovery and an evidentiary hearing (ECF Nos. 188, 190).

## III.   DISCUSSION

### A.   Timeliness

#### 1.   Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year filing period for § 2254 habeas petitions in federal court. 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's state court conviction became final (by either the conclusion of direct appellate review or the expiration of time for seeking such review). *See id.* Statutory tolling of the one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other collateral review is pending. *See* 28 U.S.C. § 2244(d)(2).

The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), limits a

habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier petition and, therefore, be considered timely under 28 U.S.C. § 2244(d). Applying Federal Rule of Civil Procedure 15(c)(1)(B) in the habeas context, the Court held that an amended petition "does not relate back ... when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650. Instead, an amended claim in a habeas petition relates back for statute of limitations purposes only if it shares a "common core of operative facts" with claims contained in the original petition. *Id.* at 664. The common core of operative facts must not be viewed at too high a level of generality, and an "occurrence," for the purposes of Rule 15(c), will consist of each separate set of facts that supports a ground for relief. *Id.* at 661.

### 2. Analysis

Respondents concede that Leonard filed his initial petition within the one-year filing period under 28 U.S.C. § 2244(d). They argue, however, that Leonard's amended petition was filed long after the one-year period had elapsed and that several claims in that petition are time-barred from federal court review because those claims do not "relate back" to his initial petition. Specifically, Respondents identify the following claims as untimely: Claims 1(G), 1(H), 1(K)(2), I(L), 1(M), 1(R)(2), 1(R)(3), 1(R)(4), 1(S), 1(T)(3), 3(A)(1)(c), 3(A)(1)(d), 3(A)(2)(a), 3(A)(2)(b), 3(B), 3(D) (in part), 3(F) (in part), 7(B), 9(A), 9(B), 9(C), 9(E), 10(B), 11, 12(B), 12(C), 12(D), 13, 14, 15, 16, 17, 18, 19(C), 19(E), 19(F), 19(G), and 20.

Leonard does not dispute that his amended petition was filed beyond the one-year filing period under § 2244(d)(1)(A), but contends his claims are nonetheless timely because they relate back to timely filed claims, a different triggering date to the one-year period applies, and/or he is entitled to equitable tolling.

///

///

a. Individual Claims

Claim 1 alleges numerous ineffective assistance of counsel ("IAC") claims based on counsel's performance in the guilt phase of Leonard's trial.

Claim 1(G) – Leonard alleges counsel were ineffective in failing to meaningfully challenge certain items of the State's forensic evidence either through cross-examination and/or the use of an expert criminalist. (ECF No. 184 at 97-102.)[3] Leonard contends this claim relates back to Ground 1 of his initial petition. In Ground 1, he alleged he received ineffective assistance of counsel because his counsel relied on a self-defense theory in the guilt phase of his trial instead of asserting mutual combat, second degree murder and/or voluntary manslaughter. (ECF No. 3 at 8-21.) The factual allegations supporting Ground 1 make reference to some of the same physical evidence discussed in Claim 1(G)—in particular, a shank recovered from the sewer pipes and powder found on the victim's body. (*Id.*) Even so, the respective claims are based on a different theory and rely on a different nucleus of facts. Thus, Claim 1(G) does not relate back to the initial petition. *See Schneider v. McDaniel,* 674 F.3d 1144, 1151 (9th Cir. 2012) (finding the mere assertion of IAC clams in a habeas petition does not support the relation back of other claims of IAC).

Claim 1(H) – Leonard alleges trial counsel were ineffective for failing to retain experts for the guilt phase to support Leonard's lack of intent, deliberation, and premeditation. (ECF No. 184 at 102-11.) The claim relies upon and cites to the declarations of purported experts on neuropsychological testing, drug addictions, and childhood traumas. (*Id.*) The claim does not share a common core of operative facts with a claim or claims in the initial petition. Thus, it does not relate back to the initial petition.

Claim 1(K)(2) – Within a broader claim that trial counsel were ineffective for failing to object to the improper impeachment of defense witness Don Hill, Leonard alleges

---

[3]For consistency, all citations to page numbers for ECF documents are based on ECF pagination.

counsel provided ineffective assistance by failing to object to the improper hearsay testimony of Associate Warden Koon that prison records verified a friendship between Hill and Leonard. (*Id.* at 118.) Rather than constitute a separate claim that does not relate back, as Respondents contend, this allegation merely supplements a claim that does relate back to the initial petition. (ECF No. 3 at 27-31.)

Claim 1(L) – Leonard alleges trial counsel were ineffective for failing to litigate the issue of the competency of crime scene investigator Jeff Cotter or otherwise impeach his testimony. (ECF No. 184 at 119-27.) The claim focuses on counsel's failure to exploit Cotter's mental health hospitalization, which was related to his investigation of Leonard's case, to impeach his credibility. The claim does not share a common core of operative facts with a claim or claims in the initial petition. Thus, it does not relate back to the initial petition.[4]

Claim 1(M) – Leonard alleges counsel were ineffective by not adequately responding to the State's objection to the introduction of a message sent to Leonard from Joseph Wright, Leonard's victim, which may have contained a threat of sexual assault. (*Id.* at 127-29.) In his initial petition, Leonard faulted counsel for not presenting testimony that Wright was an aggressive homosexual who liked to prey on young white males. (ECF No. 3 at 17.) The facts supporting Claim 1(M) are sufficiently similar in time and type to relate back to the initial petition.

---

[4]With respect to this claim and several others, Respondents argue, based on language in *King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009), that a claim in the amended petition cannot relate back to claims that were unexhausted when Leonard filed his initial petition. *See King*, 564 F.3d at 1142 ("The only sensible interpretation of *Mayle* is that it requires new claims to relate back to claims properly contained in the original petition -- that is, those claims that were exhausted at the time of filing."). This Court has long held, however, that that holding is confined to instances where, as in *King*, the unexhausted claims had been dismissed by the petitioner and then sought to be re-added by amendment. *See Koerschner v. Budge*, No. 3:05-cv-00587-ECR-VPC, 2009 WL 2382568, at *5 (D. Nev. July 30, 2009).

Claims 1(R)(2-4) – Claim 1(R) alleges counsel were ineffective in failing to ensure the trial court provided proper jury instructions. (ECF No. 184 at 146-54.) Respondents argue Claim 1(R)(1) regarding failure to challenge the "lying in wait" instruction relates back to the initial petition but the other parts of the claim do not. Parts 2,3, and 4, respectively, fault counsel for failing challenge the jury instructions on reasonable doubt, failing to request instructions about juror discussions with family and friends, and failing to request a jury instruction about mutual combat. Because those parts alleged the same type of attorney misfeasance as that raised in Leonard's initial petition, the Court concludes that they relate back for the purposes of Rule 15(c). *Cf. United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (finding relation back is not appropriate where a petitioner alleges one type of ineffective assistance in the original petition, and then amends the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance).

Claim 1(S) – Leonard alleges counsel were ineffective in failing to conduct an adequate voir dire of potential jurors. (ECF No. 184 at 154-56.) In his initial petition, Leonard alleged that appellate counsel was ineffective for failing to challenge comments the trial court made during voir dire that allegedly denigrated a defendant's right not to testify. (ECF No. 3 at 49-50.) He did not, however, raise a claim or claims that share a core of operative facts with Claim 1(S). Thus, Claim 1(S) does not relate back to the initial petition.

Claim 1(T)(2) – Within a broader claim that trial counsel were ineffective for repeatedly committing overt, affirmative acts that sabotaged the defense of their client, Leonard alleges that counsel elicited testimony unfavorable to the defense during witness examinations. (ECF No. 184 at 160-62.) Leonard did not raise a claim asserting this type of attorney error in his initial petition. Claim 1(T)(2) does not relate back to the initial petition.

Claim 3 alleges numerous IAC claims based on counsel's performance in the penalty phase of Leonard's trial.

Claim 3(A)(1)(c) – Within a broader claim that trial counsel failed to adequately present a penalty phase defense, Leonard alleges counsel improperly presented evidence of Leonard's background. (ECF No. 184 at 200-04.) Specifically, Leonard contends that the only evidence presented about his childhood was the testimony of his parents, who substantially minimized the traumatic and chaotic life they had provided their son. The allegations supporting this claim are similar in both time and type to those supporting Ground Nine of Leonard's initial petition wherein he challenges counsel's failure to present evidence related to Leonard's childhood. (ECF No. 3 at 37-40.) Thus, the claim relates back and is, therefore, timely.

Claim 3(A)(1)(d) – Within the same broader claim, Leonard alleges counsel were ineffective for failing to adequately prepare for and present the testimony of Dr. Robert Greene, who had evaluated Leonard on September 8, 1982, to address questions relating to Leonard's competency to stand trial and his sanity at the time of a 1981 Florida homicide. (ECF No. 184 at 204-08.) The core of operative facts supporting this claim do not appear in Leonard's initial petition. Claim 3(A)(1)(d) does not relate back to the initial petition.

Claims 3(A)(2)(a) and 3(A)(2)(b) – In Claim 3(A)(2), Leonard alleges that trial counsel failed to adequately investigate and present compelling mitigating evidence because they did not present evidence of Leonard's traumatic upbringing (part a.) and did not present expert testimony to explain the impact of Leonard's childhood traumas, addictions, and medical problems (part b.). (ECF No. 184 at 208-44.) Like Claim 3(A)(1)(c), these claims relate back to Ground 9 of Leonard's initial petition.

Claim 3(B) – Leonard alleges trial counsel provided ineffective assistance by not moving to set aside his death sentence as incompatible with the jury's finding that Wright contributed to his own death. (ECF No. 184 at 258-61.) The claim does not share a

common core of operative facts with a claim or claims in the initial petition. Thus, it does not relate back to the initial petition.

Claim 3(D) -- Leonard alleges trial counsel provided ineffective assistance by not requesting the trial judge's recusal and cites three separate grounds upon which counsel should have sought recusal. (ECF No. 184 at 264-67.) Leonard argues this claim relates back to Grounds 14 and 23 of his initial petition. Neither of those grounds, however, are premised on the conduct of trial counsel and, instead, allege ineffectiveness of appellate counsel and trial court error. (ECF No. 3 at 49-50, 63-66.) In addition, the factual allegations of judicial bias in Claim 3(D) go well beyond those contained in the initial petition. Thus, Claim 3(D) does not relate back to the initial petition. *See Schneider*, 674 F.3d at 1151 (holding that the fact claims share a fact "is not sufficient to conclude that they arise out of a common *core* of operative facts").

Claim 3(F) (in part) – Leonard alleges counsel were ineffective in failing to ensure proper jury instructions were issued by the trial court in the penalty phase of his trial and cites to counsel's failure to object to or request four instructions. (ECF No. 184 at 268-69.) Respondents argue the only part of the claim that relates back is counsel's alleged failure to challenge the executive clemency instruction. The Court disagrees. As with Claims 1(R)(2-4) discussed above, the entire claim relates back.

Claim 7(B) – In Claim 7, Leonard alleges his conviction and sentence violate his constitutional rights because the trial court gave the jury erroneous and unconstitutional jury instructions during the guilt phase of his trial. (ECF No. 184 at 306-12.) Respondents argue that the portion of the claim challenging the reasonable doubt instruction (7(B)) does not relate back to the initial petition. Respondents are correct. Ground 6 of the initial petition raises ineffective assistance of counsel claims with respect to failure to challenge a different instruction on state law grounds (ECF No. 3 at 31-33), but the initial petition does not challenge the reasonable doubt instruction in any respect. Claim 7(B) does not relate back to the initial petition.

Claims 9(A, B, C, and E) – In Claim 9, Leonard alleges his sentence violates his constitutional rights because the trial court gave the jury erroneous and unconstitutional jury instructions during the penalty phase of his trial. (ECF No. 184 at 318-25.) Claim 9(A) challenges the trial court's reasonable doubt instruction. Leonard argues the claim relates back to Grounds 11 and 15 of his initial petition. Those grounds, however, allege IAC claims involving other instructions. (ECF No. 3 at 42-44, 50-52.) Claim 9(A) does not relate back to the initial petition.

Claim 9(B) alleges the trial court erred by not issuing an instruction that required the jury find, as an element of death penalty eligibility, that there were insufficient mitigating circumstances to outweigh the aggravating circumstances *beyond a reasonable doubt*. Claim 9(C) alleges trial court error due to the absence of jury instructions that aggravating circumstances needed to be found unanimously while mitigating circumstances did not need to be found unanimously. These claims share a common core of operative facts with Ground 15 in the initial petition. (ECF No. 3 at 50-52.) Thus, they relate back to the initial petition.

Claim 9(E) is intertwined with all of Claim 9 in that it merely alleges that Leonard is entitled to relief based on the cumulative effect of the trial court's erroneous jury instructions. The Court does not view the allegation as an independent claim subject to relation back analysis.

Claims 10(B) and 17 – Within a broad claim that the trial court violated his constitutional rights by allowing the introduction of inadmissible evidence (Claim 10), Leonard alleges that the trial court violated his due process rights by permitting the State to introduce evidence of his protected speech. (ECF No. 184 at 328-31.) Leonard relies on essentially the same factual allegations in Claim 17 to allege violation of his right to freedom of speech and association. (*Id.* at 380-83.) The claims do not share a common core of operative facts with a claim or claims in the initial petition. Thus, Claims 10(B) and 17 do not relate back to the initial petition.

Claim 11 – Leonard claims his constitutional rights have been violated because no record exists of significant portions of the trial court proceedings during both guilt and penalty phases and because he was denied his right to be present for a portion of those proceedings. (ECF No. 184 at 332-35.) The claim does not share a common core of operative facts with a claim or claims in the initial petition. Thus, it does not relate back to the initial petition.

Claims 12(B-D) – In Claim 12, Leonard alleges his constitutional rights were violated due to judicial bias and misconduct during the guilt and penalty phases of his trial. (ECF No. 184 at 336-49.) The claim is supported by alleged examples of the trial court's bias: (1) ex parte contacts with the State and the jury (12(B)); (2) the trial court improperly deciding questions of its own bias (12(C)); and (3) the court's conflict with James Wessel, Leonard's trial counsel (12(D)). Leonard contends that these allegations relate back to Grounds 14, 17, and 23 in his initial petition.

Ground 14 is an ineffective assistance of appellate counsel claim premised on trial court communications different than those alleged in support of Claim 12(B). (ECF No. 3 at 49-50.) Ground 17 is an ineffective assistance of counsel claim alleging trial and appellate counsel performed deficiently by not recording and litigating on appeal the extensive and prejudicial security arrangements surrounding Leonard's trial. (*Id.* at 53-55.) While some of the allegedly improper communications alleged in Claim 12(B) were related to security matters, the two claims rely on different operative facts. Lastly, Ground 23 is a judicial bias claim but it is premised on alleged occurrences different than those alleged in Claims 12(B-D). (*Id.* at 63-66.)

Claims 12(B-D) do not share a common core of operative facts with a claim or claims in the initial petition. Thus, the claims do not relate back to the initial petition.

Claims 13 and 18 – In Claim 13, Leonard alleges his death sentence is unconstitutional because execution by lethal injection is cruel and unusual punishment. (ECF No. 184 at 350-65.) In Claim 18, Leonard alleges his death sentence is

unconstitutional due to the absence of a jury instruction defining the standard of proof as beyond a reasonable doubt in the weighing stage of his penalty hearing. (*Id.* at 384-85.) Leonard makes no argument that either of these claims relates back to his initial petition, but instead contends that they are timely under alternative triggering dates provided by 28 U.S.C. § 2244(d)(1). That contention is addressed below.

Claim 19 alleges numerous IAC claims based on counsel's performance in pursuing Leonard's direct appeal.

Claim 19(C) – Leonard alleges that appellate counsel was ineffective by not raising a claim of error regarding the improper admission of evidence of Leonard's philosophical writings as propensity evidence to show his guilt. (*Id.* at 392-94.) The evidence at issue is the same as that serving as the basis for Claims 10(B) and 17, discussed above. The claim does not share a common core of operative facts with a claim or claims in the initial petition. Claim 19(C) does not relate back to the initial petition.

Claim 19(E) – Leonard alleges that appellate counsel was ineffective by not raising certain guilt phase claims, in particular, the issues raised in Claims 5, 7, 8, and 11 of his first amended petition. (*Id.* at 394-95.) For the same reason Claims 7(B) and 11 do not relate back, Claim 19(E) does not relate back to the extent it is premised on appellate counsel's failure to pursue those issues. Otherwise, Claim 19(E) relates back to Leonard's initial petition.

Claim 19(F) – Leonard alleges that appellate counsel was ineffective by not raising certain penalty phase claims, in particular, the issues raised in Claims 9, 10, 13, 14, and 18 of his first amended petition. (*Id.* at 395-96.) For the same reason Claims 9(A), 10(B), 13, 14, and 18 do not relate back, Claim 19(F) does not relate back to the extent it is premised on appellate counsel's failure to raise those issues on appeal. Otherwise, Claim 19(F) relates back to Leonard's initial petition.

Claim19(G) – Leonard alleges that appellate counsel was ineffective by not raising the judicial bias claims set forth in Claims 12 and 15 of his first amended petition. (*Id.* at

396.) For the same reason Claims 12(B-D) and 15 do not relate back, Claim 19(G) does not relate back to the initial petition to the extent it is premised on appellate counsel's failure to raise those issues on appeal. Otherwise, Claim 19(G) relates back to Leonard's initial petition.

Claim 20 – Leonard alleges that his conviction and sentence are invalid due to the cumulative errors in the admission of evidence and instructions, gross misconduct by State officials and witnesses, and the systematic deprivation of his right to the effective assistance of counsel. (*Id.* at 397-99.) This claim relates back to the extent that it incorporates claims of error presented in Leonard's initial petition.

Claims 14, 15, 16 – These claims are based on allegations about Nevada's death penalty scheme, the tenure of judges in Nevada being based on popular election, and the possibility that Leonard may become incompetent in the future. (ECF No. 184 at 366-79.) Leonard makes no argument that any of these claims relate back to the initial petition nor does he make any claim-specific argument that any of them are otherwise timely filed.

b.  Alternative Triggering Dates

In addition to the date on which the petitioner's state court conviction became final, the one-year filing period can also be triggered by "the date on which the constitutional right asserted was initially recognized by the Supreme Court" (28 U.S.C. § 2244(d)(1)(C)) or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of reasonable diligence" (*Id.* § 2244(d)(1)(D)).

Leonard argues that his lethal injection claim in Claim 13 is timely under § 2244(d)(1)(D) because the factual basis for the claim "relates primarily to the recent disclosure of Nevada's execution protocol, released by the Nevada Department of Corrections on November 9, 2017." (ECF No. 186 at 48.) This argument is not convincing. Claim 13 presents a challenge to the constitutionality of the lethal injection procedure

under any circumstances and only a portion of the claim centers on the 2017 protocol. (ECF No. 184 at 350-65.) Thus, Claim 13 is not timely based on § 2244(d)(1)(D).[5]

Leonard argues Claim 18 is timely under 28 U.S.C. § 2244(d)(1)(C) because it is premised on *Hurst v. Florida*, 136 S. Ct. 616 (2016), which was issued on January 12, 2016. Here again, the Court is not persuaded. For § 2244(d)(1)(C) to apply, the constitutional right at issue must "be[] newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). Even if *Hurst* established a "newly recognized" constitutional right, the Supreme Court has not held that it applies retroactively on collateral review. *See McKinney v. Arizona*, 140 S. Ct. 702, 708 (2020). In addition, the Ninth Circuit has noted that it is "highly skeptical" of the argument that, based on *Hurst*, the "weighing determination" in Nevada must be made beyond a reasonable doubt. *See Ybarra v. Filson*, 869 F.3d 1016, 1030 (9th Cir. 2017). *See also Floyd v. Filson*, 949 F.3d 1128, 1144 n.5 (9th Cir. 2020).

### 3.    Equitable Tolling

Leonard argues that he is entitled to equitable tolling until the filing of his first amended petition in 2018. Equitable tolling is appropriate only if the petitioner can show: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." *Miranda*, 292 F.3d at 1065. He must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *See e.g.*, *Spitsyn v. Moore*, 345

---

[5]For reasons discussed below, Claim 13 is not cognizable in habeas to the extent it challenges Nevada's protocol.

F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

The extraordinary circumstances Leonard identifies as grounds for equitable tolling are a conflicted state post-conviction counsel, his reliance on misleading scheduling orders, this Court's denial of resources, and his current counsel's actions.  The Court will address each grounds in turn,

a.  Conflicted state post-conviction counsel

Leonard argues that he is entitled to equitable tolling because this Court denied discovery based on the deficient performance of Richard Cornell, who represented Leonard in state post-conviction proceedings and was also appointed to represent Leonard in this case. Leonard cites to this Court's order of February 2, 2000, in which the Court denied Cornell's discovery request because the state court had previously provided him with the resources and ample time to conduct the discovery he sought to conduct. (ECF No. 43.) According to Leonard, Cornell should have moved to substitute counsel instead of continuing to represent him until 2007.

Leonard suggests these circumstances establish that Cornell was laboring under a "disabling conflict of interest" but generally a conflict of interest exists where the interests of counsel stand in opposition to those of his client. *See, e.g.*, *United States v. Del Muro*, 87 F.3d 1078, 1080 (9th Cir. 1996). This Court is unable to discern how its denial of Cornell's discovery request placed his interests in opposition to those of Leonard. Moreover, by Leonard's own admission, Cornell's representation did not extend beyond 2007. Thus, it does not account for the eleven years between then and the filing of his first amended petition. In short, Cornell's representation did not constitute an extraordinary circumstance that is causally connected to Leonard's late filing.

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   b.   This Court's scheduling orders

Relying primarily on *Sossa v. Diaz*, 729 F.3d 1225 (9th Cir. 2013), and *Williams v. Filson*, 908 F.3d 546 (9th Cir. 2018), Leonard argues that he is entitled to equitable tolling because this Court's misleading scheduling orders were the cause of his late filing.

The court of appeals in *Sossa* held that the lower court should have granted equitable tolling to a *pro se* habeas petitioner who had sought and obtained extensions of time to file an amended petition beyond the statutory deadline. *See* 729 F.3d at 1235. The court reasoned that Sossa's request to extend the due date for his amended petition was premised "on the understanding that if the request were granted and [he] filed his amended petition by the new due date, the petition would be deemed timely," and that "[b]y granting Sossa's request . . . , the magistrate judge conveyed that the premise of Sossa's request was accurate." *Id.* at 1233. According to the court in *Sossa*, "the magistrate judge's order granting Sossa's extension request affirmatively misled him in the very manner that the Supreme Court's decision in *Pliler v. Ford*,[6] and our decisions in *Ford* and *Brambles*,[7] require." *Id.* (footnotes added).

Leonard's reliance on *Sossa* is strained at best. For one, Sossa was proceeding *pro se* with scant legal resources and filed his amended petition only eighteen days after the statutory deadline. *See* 729 F.3d at 1227-28. In addition, Sossa's initial petition contained no substantive claims. *See* 729 F.3d at 1227. So, in granting Sossa's requests for additional time, the magistrate judge was, in essence, setting a new deadline for Sossa's initial petition. Not only were the court's extensions "affirmatively" misleading, the denial of equitable tolling would have meant the complete dismissal of Sossa's case, a harsh result under the circumstances.

///

---

[6]542 U.S. 225 (2004).

[7]*Brambles v. Duncan*, 412 F.3d 1066 (9th Cir. 2005).

Here, Leonard timely filed an initial petition containing numerous substantive claims. (ECF No. 3.) His amended petition was filed 18 years after the statutory deadline. And, once *Mayle* was decided on June 23, 2005, Leonard was on notice that newly added claims might not relate back and could therefore be deemed untimely. Yet, even with the benefit of experienced counsel who specialize in federal habeas law, he waited nearly 13 years after the issuance of *Mayle* to file his amended petition. At no point did the Court enter a scheduling order or grant an extension of time suggesting Leonard could file an amended petition without concern that newly-added claims would be untimely if they did not relate back to his initial petition.[8]

In *Williams*, the petitioner filed his initial petition within the one-year statutory period imposed by § 2244(d) but filed his amended habeas petition raising new claims over a year beyond the end of the period. *See id.* at 557. The *Williams* court concluded that petitioner was entitled to equitable tolling for the period between the statutory deadline (August 29, 1998) and the date he filed his amended petition (September 17, 1999). *See id.* at 558. In particular, the court granted equitable tolling based on the petitioner's reasonable reliance, during the relevant time period, on the unsettled state of the law applying "relation back" in the federal habeas context. *Id.* at 559-60.

The court found petitioner's reliance was "eminently reasonable" because (1) as of August 1998 (*i.e.*, the AEDPA deadline) the petitioner's counsel "had no reason to suspect that Rule 15(c) would pose an obstacle to consideration of newly added claims in an amended petition" and (2) the federal district court and the State also assumed any newly added claims would relate back. *See id.* at 560-61. With respect to the former, the court cited to the Ninth Circuit's broad construction of the relation-back standard that prevailed at the time. *See id.* at 560. As for the district court, the court noted "the series

---

[8]Indeed, the first order that even contemplated the filing of an amended petition was the scheduling order entered at the conclusion of Leonard's exhaustion stay in 2016 that gave him the *option* to file an amended petition. (ECF No. 120 at 1-2.)

of scheduling orders" that permitted the petitioner additional time to file his amended petition. *Id.*[9] The court also noted that "the State waited *eight years* after receiving the amended petition before moving to dismiss any of the claims on the ground that they did not relate back to the original petition under Rule 15(c)." *Id.* at 561 (emphasis in the original). The court summarized by stating that "it was not until the Supreme Court decided *Mayle* [*v. Felix*, 545 U.S. 644 (2005)] that anyone involved in this case suggested that the newly added claims might not relate back and could therefore be deemed untimely." *Id.*

As with *Sossa*, *Williams* provides little, if any, support to Leonard's equitable tolling argument. Leonard concedes the Court did not, in this case, make use of the procedures outlined in the George Memo. (ECF No. 186 at 55.) As noted in footnote 7 above, the only scheduling order entered in this case that provided for the filing of an amended petition was entered long after uncertainty regarding relation back had been eliminated by *Mayle*.[10] In addition, the equitable tolling period in *Williams* began and ended long before *Mayle* – *i.e.*, during a time when reliance on the unsettled state of the law was reasonable. Given *Mayle*'s clear holding, Leonard was obliged, from June 2005 forward, to recognize the time constraints on bringing claims that did not relate back to his initial

---

[9]These orders were entered in accordance with the "George Memo," which established standardized procedures for adjudicating federal capital cases in Nevada. *Id.* at 556.

[10]This Court typically gives a capital habeas petitioner the option of filing an amended petition upon re-opening after an exhaustion stay. Generally, the purpose for doing so, especially post-*Mayle*, has not been to permit the addition of new substantive habeas claims. Instead, the intent is to allow the petitioner to update his petition, which could include adding relevant information (*e.g.*, procedural information) that has accrued since his prior petition, citing to relevant intervening case law, and/or merely reformatting the form of the petition.

1  petition. And, unlike in *Williams*, the State moved to dismiss claims on timeliness grounds

2  in their initial response to Leonard's amended petition.[11]

3        c.  Denial of resources

4        Leonard further argues that this Court's denial of resources for discovery,

5  investigation, and experts entitles him to equitable tolling for the claims relying on those

6  resources and that, because his initial petition was filed without the meaningful assistance

7  of appointed counsel, investigators, or experts, barring his amended claims as untimely

8  would deprive him of his right to mandatory appointment of counsel under 18 U.S.C. §

9  3599(a)(2). This argument fails for multiple reasons. First, Leonard makes no effort to

10  demonstrate that this Court erred by denying his requests for discovery. *See Rich v.*

11  *Calderon*, 187 F.3d 1064, 1068 (9th Cir. 1999) ("Discovery is available only in the

12  discretion of the court and for good cause shown."). Second, he does not identify which

13  particular claims the alleged lack of resources prevented him from presenting in a timely

14  manner. Third, Leonard was ultimately able to file his amended petition notwithstanding

15  that alleged denial of resources, but absent from his argument is any indication as to

16  when this "extraordinary circumstance" justifying equitable tolling abated or that he was

17  thereafter diligent in filing his amended petition. *See Smith v. Davis*, 953 F.3d 582, 599

18  (9th Cir. 2020) (habeas petitioner seeking equitable tolling "must show that he has been

19  reasonably diligent in pursuing his rights not only while an impediment to filing caused by

20  an extraordinary circumstance existed, but before and after as well, up to the time of filing

21  his claim in federal court").

22  *///*

23

24        [11]Leonard argues that Respondents were complicit in the delayed filing of his
amended petition because they did not oppose his motion for a stay in 2006. Leonard's

25  stated purpose in moving for a stay, however, was to exhaust claims contained in his

26  *initial* petition. (ECF No. 87.) Thus, Respondents' non-opposition to the stay cannot be
construed as a waiver of a timeliness defense to new claims added after the stay was

27  lifted.

28

1

2                   d.  Current counsel's actions

Lastly, Leonard argues that his current attorney's failure to file a timely amended

3 petition amounted to the type of attorney misconduct that warrants equitable tolling.

4 Leonard would need to show, however, that his "attorney's conduct constitutes far more

5 than 'garden variety' negligence or 'excusable neglect.'" *Holland*, 560 U.S. at 652. There

6 is no evidence before the Court suggesting that Leonard could make such a showing.[12]

7                  **4.  Actual Innocence**

8        Leonard argues that any untimeliness of his claims may be excused because he

9 is actually innocent of first-degree murder and the death penalty. A showing of "actual

10 innocence" is a recognized method for a petitioner to establish a miscarriage of justice

11 sufficient to avoid procedural bars to consideration of the merits of his petition. *See Schlup*

12 *v. Delo*, 513 U.S. 298, 316 (1995). The actual innocence gateway is also available to

13 bypass the expiration of the statute of limitations under § 2244(d). *See McQuiggin v.*

14 *Perkins*, 569 U.S. 383, 386 (2013).

15        Under *Schlup*, "actual innocence" is established when, in light of all the evidence,

16 "it is more likely than not that no reasonable juror would have convicted [the petitioner]."

17 *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327-28).

18 The petitioner must establish his factual innocence of the crime, and not mere legal

19 insufficiency. *See id.*; *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003).

20 Moreover, "[t]o be credible, [a claim of actual innocence] requires petitioner to support his

21 allegations of constitutional error with new reliable evidence – whether it be exculpatory

22 scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that

23

24        [12]Also, given the absence of any evidence indicating more than mere attorney

25 negligence, the Court denies Leonard's counsel's request to appoint separate counsel for
the purpose of determining whether counsel's actions provide grounds for equitable

26 tolling. *See Christeson v. Roper*, 574 U.S. 373, 380 (2015) (recognizing potential for
abusive delay in capital case as a "valid consideration" for denying substitution of counsel

27 where evidence of attorney misconduct is lacking).

28

was not presented at trial." *Schlup*, 513 U.S. at 324; *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). As such, a petitioner cannot meet the gateway actual-innocence standard by merely alleging that there was insufficient evidence presented at trial to support a finding of guilt. *See House v. Bell*, 547 U.S. 518, 538 (2006).

Here, Leonard claims that he can establish his actual innocence of first-degree murder based an erroneous "lying in wait instruction" and evidence that establishes that he lacked the specific intent to commit first-degree murder. He contends that the evidence demonstrates he killed Wright in a prison fight that Wright started and that was aided and abetted by prison guards. As further evidence of his lack of specific intent, he also points to evidence of brain damage combined with trauma associated with physical abuse and neglect he experienced as a child.

As to the "lying in wait" instruction, Leonard claims it was constitutionally defective because it allowed for a first-degree murder conviction regardless of whether the killing was intentional or accidental. (ECF No. 186 at 68.) In affirming the denial of Leonard's first state habeas petition, the Nevada Supreme Court indicated that the instruction was not necessarily supported by Nevada law. (ECF No. 162-27 at 13.) As the state supreme court noted, however, the jury found Leonard guilty of first-degree murder under a premeditation and deliberation theory in addition to the "lying in wait" theory. (*Id.*; *see also* ECF Nos. 152-30, 155-14, 155-15.)

The State presented the following evidence at trial. Leonard and Wright were housed together in a lock down unit of the Nevada State Prison. (ECF No. 154-29 at 18.) At shower time each prisoner on the tier was allowed to individually leave his cell for 15 minutes, in a well-known sequential order, while all the remaining prisoners remained locked in their respective cells. (*Id.* at 23-30.) Wright, as wing porter, would shower first then be let out of his cell to clean the wing after everyone was finished. (*Id.* at 24.) On the night of the incident, a night on which Leonard was last in the sequence, the correctional officer on duty locked Leonard's cell door from a control box at the conclusion of shower

time, mistakenly assuming Leonard was inside his cell. (*Id.* at 41-45.) Upon opening Wright's cell from the control box, to allow Wright to clean up, the officer observed Leonard run toward Wright's cell. (*Id.* at 45-47.) Leonard was able to enter the cell just as the officer closed it. (*Id.* at 49.)

Unable to intervene without backup, the officer opened the cell and heard a struggle and "a lot of banging around" for "at least a minute or two." (*Id.* at 49-51.) He then saw Wright emerge from the cell in a boxer's stance with blood on him. (*Id.* at 51-53.) Leonard then rushed out and tackled Wright. (*Id.*) After wrestling with Wright for approximately a minute, Leonard got up and walked into his cell, leaving Wright slouched on the floor. (*Id.* at 55-59.) An autopsy revealed the Wright had suffered 21 stab wounds from his head to his feet. (ECF No. 154-34 at 39-48.) Leonard's only apparent injuries were superficial scratches on one arm. (ECF Nos. 154-34 at 13-14, 154-35 at 54-55.)

Leonard's proffered evidence falls short of establishing his actual innocence. His claim that Wright started the fight is supported only by the testimony of two other prisoners, both of whom were Leonard's acquaintances and refused to provide information to investigators. (ECF No. 155-7.) A correctional officer who responded to the scene testified that the same two prisoners were "celebrating" immediately following the incident. (ECF No. 154-29 at 124-25.)

As for prison personnel's complicity in the killing, Leonard's proffered evidence is far from conclusive. (ECF No. 184 at 70-77.) And, even if established as a fact, correctional officers allowing the fight to occur does compel a finding that no reasonable juror would have convicted Leonard of first-degree murder. Moreover, one of Leonard's trial counsel, Sue Saunders, testified at the post-conviction evidentiary hearing that Leonard had told her that he hid behind a trash can with shank and waited to attack Wright, knowing that Wright was about to be let out of his cell to do porter work. (ECF No. 160-18 at 30-31.)

Lastly, Leonard's claim that he lacked the mental capacity to form specific intent is premised on a report from a neuropsychologist indicating that Leonard was unable to control his actions and would react violently when threatened. (ECF No. 186 at 70-71.) Such evidence falls short of establishing actual innocence, especially given the weight of evidence demonstrating that Leonard was the aggressor. *See Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir. 2000) (holding that a psychological report that the petitioner could not form the requisite intent to commit murder did not qualify her for the actual innocence exception).

With respect to establishing that he is actually innocent of the death penalty, Leonard must demonstrate "by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992); *see Schlup*, 513 U.S. at 327 (recognizing the "clear and convincing" standard under *Sawyer* imposes a higher burden of proof than a showing of "more likely than not"). The *Sawyer* standard can be met by "showing that there was no aggravating circumstance or that some other condition of eligibility had not been met." *Id.* at 345.

In claiming that he is actually innocent of the death penalty, Leonard argues that "new mitigating evidence" presented in state post-conviction proceedings—in particular, documentation of his childhood of neglect, abuse, and instability, the resulting addictions, his head injuries, and his mental illnesses—outweighs the aggravating factors found by the jury in the penalty phase of his trial. Be that as it may, Leonard will still need to demonstrate that both of the aggravating circumstances supporting his death penalty are invalid. *See Sawyer*, 505 U.S. at 336 ("Sensible meaning is given to the term 'innocent of the death penalty' by ... a showing that there was no aggravating circumstance or that some other condition of eligibility had not been met."); *see also Cade v. Haley*, 222 F.3d 1298, 1308 (11th Cir. 2000) ("[A] showing of actual innocence can only refer to those state-law requirements that must be satisfied to impose the death penalty, i.e., the

elements of the capital crime and *minimum* required aggravating factors.") (emphasis added). Leonard has not made this showing.

### 5. Conclusion

Having concluded that Leonard is not entitled to equitable tolling, claims in his first amended petition that do not relate back to his initial petition are dismissed as untimely. Based on the analysis above, the following claims fit into that category: Claims 1(G), 1(H), 1(L), 1(S), 1(T)(2), 3(A)(1)(d), 3(B), 3(D), 7(B), 9(A), 10(B), 11, 12(B-D), 13, 14, 15, 16, 17, 18, 19(C), 19(E) (in part), 19(F) (in part), 19(G) (in part), and 20 (in part).

## B.   EXHAUSTION

### 1. Legal Standard

A federal court will not grant a state prisoner's petition for habeas relief until the prisoner has exhausted his available state remedies for all claims raised. *See Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). A petitioner must give the state courts a fair opportunity to act on each of his claims before he presents those claims in a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. *See Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981).

A habeas petitioner must "present the state courts with the same claim he urges upon the federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). To achieve exhaustion, the state court must be "alerted to the fact that the prisoner [is] asserting claims under the United States Constitution" and given the opportunity to correct alleged violations of the prisoner's federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *see also Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). It is well settled that 28 U.S.C. § 2254(b) "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court."

*Jiminez v. Rice*, 276 F.3d 478, 481 (9th Cir. 2001) (quoting *Rose v. Lundy*, 455 U.S. at 520).

A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based. *See Bland v. California Dept. of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994). The exhaustion requirement is not met when the petitioner presents to the federal court facts or evidence which place the claim in a significantly different posture than it was in the state courts, or where different facts are presented at the federal level to support the same theory. *See Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988). On the other hand, new allegations that do not "fundamentally alter the legal claim already considered by the state courts" will not render a claim unexhausted. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *see also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir. 1994).

### 2. Analysis

Respondents argue that the following claims in Leonard's first amended petition remain unexhausted: Claims 1(B)(1) (in part), 1(E), 1(I), 1(K)(2), I(L), 1(M), 1(O), 1(R)(2), 1(R)(3), 1(R)(4), 1(S), 1(T)(2), 1(T)(3), 3(A)(1)(c), 3(B), 3(D), 3(E), 3(F) (in part), 3(H), 4, 6(B), 6(C), 7, 8, 9(A), 9(B), 9(D), 9(E), 10(A), 10(B), 11, 13, 14, 15, 16, 17, 18, 19(A), 19(B), 19(C), 19(E), 19(F), 19(G), and 20.

As noted above, Claim 1 alleges numerous IAC claims based on counsel's performance in the guilt phase of Leonard's trial.

Claim 1(B)(1) – Within a broader claim that counsel were ineffective for failing to adequately develop and present a defense, Leonard alleges counsel failed to conduct an adequate pretrial investigation. (ECF No. 184 at 51-53.) Specifically, Leonard faults counsel for not reading the Critical Incident Review Board's report of the homicide, for failing to file a pretrial motion to dismiss the charges based on the lost or destroyed evidence of the videotape of the incident, for failing to conduct an independent examination of the shanks alleged to be involved in the homicide, for failing to discover

video of yard fights involving the victim, and for failing to ensure preservation of important physical evidence. (*Id.*)

Leonard argues that he exhausted this claim in his third state habeas proceeding. In that proceeding, he alleged ineffective assistance based on counsel's failure to conduct an independent examination of the shanks alleged to be involved in the homicide. (ECF No. 166-24 at 48-50, 53-54.) He did not, however, fairly present the remaining factual allegations. Thus, Claim 1(B)(1) is mostly unexhausted and, for reasons discussed below, the exhausted portion is procedurally defaulted.

Claim 1(E) – Leonard alleges counsel were ineffective for failing to present numerous available witnesses favorable to the defense. (ECF No. 184 at 87-91.) Leonard identifies the following individuals as potential witnesses: inmates Timothy Johnson, Richard Burch, Jack McFadden, Joel Burkett, correctional officers and inmates from the victim's prior assaults, Sgt. Coleman, Officer Whitney, and inmate Cross. Leonard does not dispute that he has failed to fairly present this claim to the highest available state court. The claim is unexhausted.

Claim 1(I) – Leonard alleges counsel were ineffective for failing to adequately defend his right to testify and oppose the trial court's contingency ruling allowing evidence of other crimes. (ECF No. 184 at 111-14.) In his first state habeas proceeding, Leonard raised a claim faulting appellate counsel for not arguing on appeal that Leonard was improperly denied his right to testify. (ECF No. 161-38 at 97-103.) He has not, however, fairly presented to the state court a claim premised on trial counsel's ineffectiveness. The claim is unexhausted.

Claim 1(K)(2) – As noted above, this is an allegation that counsel provided ineffective assistance by failing to object to the improper hearsay testimony of Associate Warden Koon that prison records verified a friendship between Hill and Leonard. (ECF No. 184 at 118.) This allegation does not fundamentally alter Leonard's IAC claim presented to the Nevada Supreme Court in his first state habeas proceeding that trial

counsel were ineffective for failing to support the credibility of defense witness Hill. (ECF No. 161-38 at 43-50.) Claim 1(K) is exhausted.

Claim 1(L) – As noted above, this claim alleges trial counsel were ineffective for failing to litigate the issue of the competency of crime scene investigator Jeff Cotter or otherwise impeach his testimony. (ECF No. 184 at 119-27.) Leonard has not fairly presented an IAC claim premised on Cotter's alleged lack of competency to the Nevada courts. The claim is unexhausted.

Claim 1(M) – As noted above, this claim alleges counsel were ineffective by not adequately responding to the State's objection to the introduction of a message sent to Leonard from Joseph Wright, Leonard's victim, which may have contained a threat of sexual assault. (*Id.* at 127-29.) Leonard does not dispute that he has failed to fairly present this claim to the highest available state court. The claim is unexhausted.

Claim 1(O) – Leonard alleges trial counsel were ineffective in failing to object to multiple instances of prosecutorial misconduct during the guilt phase of his trial. (*Id.* at 138-39.) Leonard concedes that he raised instances of prosecutorial misconduct only as a standalone claim on direct appeal and as a claim concerning appellate counsel's ineffectiveness during his second state post-conviction proceedings. (ECF No. 186 at 79.) Although related, his ineffective assistance of trial counsel claim is a distinct claim with separate elements of proof. Because it has not been separately and specifically presented to the state courts, it is unexhausted. *See Rose v. Palmateer*, 395 F.3d 1108, 1111-12 (9th Cir. 2005).

Claim 1(R)(2-4) – As noted above, this portion of Claim 1(R) alleges counsel were ineffective in failing to challenge the jury instructions on reasonable doubt, failing to request instructions about juror discussions with family and friends, and failing to request a jury instruction about mutual combat. (ECF No. 184 at 146-54.) Leonard does not dispute that he has failed to fairly present the latter two issues to the highest available state court. With respect to the reasonable doubt issue, he notes that he challenged the

reasonable doubt instruction in his reply brief on direct appeal. He did not, however, fairly present an IAC claim based on counsel's failure to request the instruction. Thus, Claim 1(R)(2-4) is unexhausted.

Claim 1(S) – As noted above, this claim alleges counsel were ineffective in failing to conduct an adequate voir dire of potential jurors. (ECF No. 184 at 154-56.) Leonard does not dispute that he has failed to fairly present this claim to the highest available state court. The claim is unexhausted.

Claim 1(T)(2-3) – In Claim T(2), Leonard alleges counsel was ineffective by repeatedly engaging in open-court discussions before the jury regarding harmful evidence prior to a ruling on admissibility. (ECF No. 184 at 158-60.) As noted above, he alleges in Claim 1(T)(3) that counsel elicited testimony unfavorable to the defense during witness examinations. (*Id.* at 160-62.) Leonard does not dispute that he has failed to fairly present these claims to the highest available state court. The claims are unexhausted.

As noted above, Claim 3 alleges numerous IAC claims based on counsel's performance in the penalty phase of Leonard's trial.

Claim 3(A)(1)(c) – As noted above, Claim 3(A)(1)(c) alleges counsel improperly presented evidence of Leonard's background, in particular the testimony of his parents, who substantially minimized the traumatic and chaotic life they had provided their son. (ECF No. 184 at 200-04.) This allegation does not fundamentally alter Leonard's IAC claim presented to the Nevada Supreme Court in his third state habeas proceeding that trial counsel were ineffective in failing to investigate and present mitigating evidence. (ECF No. 166--24 at 61-81.) Claim 3(A) is exhausted.

Claim 3(B) – As noted above, this claim alleges trial counsel provided ineffective assistance by not moving to set aside his death sentence as incompatible with the jury's finding that Wright contributed to his own death. (ECF No. 184 at 258-61.) Leonard does not dispute that he has failed to fairly present this claim to the highest available state court. The claim is unexhausted.

Claim 3(D) – As noted above, this claim alleges trial counsel provided ineffective assistance by not requesting the trial judge's recusal and cites three separate grounds upon which counsel should have sought recusal. (ECF No. 184 at 264-67.) Leonard raised a claim on direct appeal alleging the trial judge erred by not recusing himself but the argument was premised entirely on the Nevada Code of Judicial Conduct. (ECF No. 158-6 at 14-16.) He also raised a judicial bias claim in his third state habeas proceeding but did not allege that trial counsel was ineffective in failing to pursue recusal. (ECF No. 166-24 at 90-102.) Thus, Claim 3(D) is unexhausted.

Claim 3(E) – Leonard alleges trial counsel were ineffective for failing to object to an improper special verdict form. (ECF No. 184 at 268.) Leonard does not dispute that he has failed to fairly present this claim to the highest available state court. The claim is unexhausted.

Claim 3(F) (in part) – As noted above, Claim 3(F) alleges counsel were ineffective in failing to ensure proper jury instructions were issued by the trial court in the penalty phase of his trial and cites to counsel's failure to object to or request four instructions. (ECF No. 184 at 268-69.) In his first state habeas proceeding, Leonard presented a claim to the Nevada Supreme Court that trial counsel was ineffective by failing to challenge the executive clemency instruction. (ECF No. 161-38 at 89-94.) In his second state habeas proceeding, Leonard presented a claim to the Nevada Supreme Court that trial counsel was ineffective by not requesting an instruction that jurors need not be unanimous in finding mitigating factors. (ECF No. 164-31 at 23.) Leonard did not present the state courts with an IAC claim related to the remaining two instructions. Thus, the claim is unexhausted as to those instructions.

Claim 3(H) – Leonard alleges trial counsel were ineffective for failing to object to improper statements by the prosecutor. (ECF No. 184 at 270-71.) Here again, Leonard concedes that he raised instances of prosecutorial misconduct only as a standalone claim on direct appeal and as a claim concerning appellate counsel's ineffectiveness during his

second state post-conviction proceedings. (ECF No. 186 at 83.) Thus, as with Claim 1(O), this claim is unexhausted.

Claim 4 – Leonard alleges his death sentence is invalid because the special verdict form given to the jury for penalty deliberations did not include life-sentencing options and contained misleading language. (ECF No. 184 at 277-79.) In his first state habeas proceeding, Leonard argued on appeal that his trial counsel was ineffective by not challenging the special verdict form. (ECF No. 161-38 at 94-97.) That did not, however, serve to exhaust Claim 4 as a standalone claim. *See Rose*, 395 F.3d at 1112. In addition, the Court rejects Leonard's argument that the claim was exhausted by virtue of the Nevada Supreme Court's discussion of the verdict form in rejecting his IAC claim. The Nevada Supreme Court considered the validity of the form on narrower grounds than Leonard advances in Claim 4 and did not address it as a matter of federal law. (ECF No. 162-27 at 16-17.) *Cf. Greene v. Lambert*, 288 F.3d 1081, 1086 (9th Cir. 2002) ("[E]xhaustion does not require repeated assertions if a *federal* claim is actually considered at least once on the merits by the highest state court.") (emphasis added). Claim 4 is unexhausted.

Claim 6(B) and (C) – In Claim 6, Leonard contends that he is entitled to habeas relief due to prosecutorial misconduct. (ECF No. 184 at 290-305.) Claim 6(B) alleges the prosecutor committed misconduct by making assertions not supported by the evidence. Claim 6(C) alleges the prosecutor committed misconduct by appealing to jurors' fears that Leonard could escape if not sentenced to death. Leonard presented arguments based on prosecutorial misconduct in his direct appeal. (ECF No. 158-6 at 19-27.) He relied, however, on different factual allegations than those supporting Claims 6(B) and (C). He did not present the claims to the highest available state court in any of his state post-conviction proceedings. The claims are unexhausted.

Claim 7 – As noted above, this claim alleges Leonard's conviction and sentence violate his constitutional rights because the trial court gave the jury erroneous and

unconstitutional jury instructions during the guilt phase of his trial. (ECF No. 184 at 306-12.) Claim 7(B) challenges the reasonable doubt instruction. Claim 7(A) involves the "lying in wait" instruction. Leonard argues that he fairly presented the latter claim in his first state habeas proceeding, but he challenged the "lying in wait" instruction in that proceeding only in the context of an IAC claim and only on state law grounds. (ECF No. 161-38 at 65-68.) The claim is unexhausted.

Leonard attempted to present a challenge to the reasonable doubt instruction on direct appeal, but not until he filed his reply brief. (ECF No. 158-11 at 15-18.) In Nevada, "an appellant is not permitted to raise an issue on appeal for the first time in his or her reply brief. ..." *Talancon v. State*, 721 P.2d 764, 769 n.4 (Nev. 1986).[13] Thus, presentation of the issue in this manner was not sufficient to effect exhaustion. *See Castille v. Peoples,* 489 U.S. 346, 351 (1989) (exhaustion cannot be achieved by a procedurally deficient or improper means).

Leonard also contends he exhausted the claim by including it in a supplemental petition that was part of the record on appeal in his first state habeas proceeding. This was also insufficient for exhaustion purposes. *See Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir.2005) (exhaustion requires presentation of federal constitutional issue

---

[13]Though not in effect at the time, this rule has since been codified at Nev. R. App. P. 28(c).

before the highest available state court "within the four corners of his appellate briefing").[14, 15] Thus, Claim 7 is unexhausted in its entirety.

Claim 8 – Leonard claims his conviction and sentence are in violation of his constitutional rights due to trial court error in the introduction of inadmissible evidence. (ECF No. 184 at 313-17.) Claim 8(A) alleges a due process violation based on the introduction of a prison-made weapon that, according to Leonard, the State failed to adequately connect to the homicide. Leonard argues the claim is exhausted because, even though his challenge to the admission of the weapon was made within claims of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and judicial bias, the Nevada Supreme Court addressed the claim "as a standalone challenge." (ECF No. 186 at 88.) This argument fails because the Nevada Supreme Court did not address the federal law issue Leonard advances in Claim 8(A) – *i.e.*, whether admission of the evidence violated his federal right to due process. (ECF No. 162-7 at 7-8.) Claim 8(A) is unexhausted.

Claim 8(B) alleges that the introduction of letters purportedly written by defense witness Don Hill rendered Leonard's trial fundamentally unfair. Leonard makes the same exhaustion argument for this claim as he does for Claim 8(A). Here again, the Nevada

---

[14]Throughout his opposition, Leonard relies upon *Insyxiengmay v. Morgan*, 403 F.3d 657 (9th Cir. 2005) and *Scott v. Schriro*, 567 F.3d 573 (9th Cir. 2009), to contend that claims have been fairly presented to the Nevada Supreme Court because they can be located in the record on appeal. The argument is unavailing because the exhaustion analysis in both of those cases was tied to the relevant state procedures governing post-conviction review. *See Insyxiengmay*, 403 F.3d at 668-69; *Scott*, 567 F.3d at 582 n. 8. Most notably, both involved attachments to petitions or motions for discretionary review that were denied by the state supreme court. *See id.* Here, by contrast, Leonard was entitled to an appeal as of right with respect to the lower court's denial of post-conviction review. *See White v. Warden, Nevada State Prison*, 614 P.2d 536 (1980). Accordingly, *Castillo* controls the Court's analysis herein.

[15]In addition, the supplemental petition merely alleged, without elaboration, that trial counsel failed to make an adequate record that the reasonable doubt instruction violated due process and that the issue was ineffectively litigated on appeal. (ECF No. 159-17 at 43.)

Supreme Court did not address the federal law issue presented in Claim 8(B). (*Id.* at 9-10.) The claim is unexhausted.

Claim 9 – As noted above, this claim alleges Leonard's sentence violates his constitutional rights because the trial court gave the jury erroneous and unconstitutional jury instructions during the penalty phase of his trial. (ECF No. 184 at 318-25.) Respondents argue that only Claim 9(C), which alleges deficiencies in the trial court's instructions on aggravating and mitigating circumstances with respect to unanimity, is exhausted.

For Claim 9(A), which challenges the reasonable doubt instruction, Leonard makes the same exhaustion argument as he does for Claim 7(B). For the reasons discussed above in relation to Claim 7(B), that argument is without merit. Claim 9(A) is unexhausted.

Leonard does not dispute that he has failed to fairly present Claim 9(B) to the highest available state court. The claim is unexhausted.

Claim 9(D) alleges that a penalty phase jury instruction was unconstitutional because it could have led a reasonable juror to believe that a sentence of death could later be modified to allow for Leonard's release. Leonard argues he fairly presented this claim in his first state habeas proceeding by arguing counsel were ineffective for not objecting to this instruction and by arguing in his reply brief on appeal that he was "ineligible as a matter of law for executive clemency and, therefore, no clemency instruction should have been given." (ECF No. 186 at 91.) He further argues that the Nevada Supreme Court addressed the latter argument "as a standalone challenge to the jury instruction." (*Id.*) This Court agrees that the Nevada Supreme Court addressed the propriety of the instruction as a matter of federal law. (ECF No. 162-27 at 16-17.) The claim is exhausted. *See Greene*, 288 F.3d at 1086.

As noted above, Claim 9(E) merely alleges that Leonard is entitled to relief based on the cumulative effect of the trial court's erroneous jury instructions. The Court does not view the allegation as an independent claim subject to exhaustion analysis.

Claim 10 – Leonard alleges his death sentence violates his constitutional rights due to trial court error in the introduction of inadmissible evidence. (ECF No. 184 at 326-31.) Claim 10(A) challenges the admission of evidence about an attempted escape and prior convictions. Leonard argues that this claim was exhausted in his direct appeal.

In his opening brief on direct appeal, Leonard argued that the trial court erred by admitting evidence about the escape attempt and prior convictions, but based his argument on state evidence law. (ECF No. 158-6 at 18-19.) In its answering brief, the State addressed the admissibility of the evidence in constitutional terms. (ECF No. 158-10 at 43-47.) In his reply brief, Leonard made brief reference to the admission of the evidence being a violation of his "due process right and right to a fair trial." (ECF No. 158-11 at 11-13.) In its order affirming Leonard's judgment of conviction, the Nevada Supreme Court applied only state law in deciding the state court did not err by admitting the evidence. (ECF No. 158-15 at 5.) Based on the foregoing, the Court concludes that Leonard failed to apprise the state court of the federal nature of his claim and, therefore, has not satisfied the exhaustion requirement for Claim 10(A). *See Johnson v. Zenon*, 88 F.3d 828, 830-31 (9th Cir. 1996).

Claim 10(B) alleges that the admission of Leonard's personal writings during the penalty phase violated the Due Process Clause and the First Amendment. Leonard argues that the claim was exhausted because he objected to admission of this evidence at trial and challenged admission of the writings in his supplement to his initial state post-conviction petition, then included the trial transcripts, the petition, the opening brief in support of the petition, and the reply brief in support of the petition in the record on direct appeal and his initial state post-conviction petition. Even if this was an acceptable method of exhaustion, however, nowhere in those transcripts, pleadings or briefs did Leonard argue a violation of his rights under the Due Process Clause or First Amendment. Claim 10(B) is unexhausted.

Claim 11 – As noted above, this claim alleged Leonard's constitutional rights have been violated because no record exists of significant portions of the trial court proceedings during both guilt and penalty phases and because he was denied his right to be present for a portion of those proceedings. (ECF No. 184 at 332-35.) Leonard argues the claim is exhausted because the Nevada Supreme Court addressed unrecorded bench conferences in its decision on appeal from the denial of Leonard's initial state post-conviction petition. (ECF No. 186 at 93-94 (citing ECF No. 162-27 at 9 n.5).) The state court's reference to the unrecorded conference did not address the federal law issue presented in Claim 11. The claim is unexhausted.

Claims 13, 14, 15, 16, 17, and 18 – Leonard does not dispute that he failed to fairly present these claims to the highest available state court. These claims are unexhausted.

As noted above, Claim 19 alleges numerous IAC claims based on counsel's performance in pursuing Leonard's direct appeal.

Claim 19(A) – Leonard alleges appellate counsel was ineffective in failing to argue that Leonard's death sentence should be overturned because penalty witness Theodore Burkett produced a razor blade from his mouth during the penalty hearing which was admitted into evidence and sent to the jury during penalty deliberations. (ECF No. 184 at 387-91.) Leonard argues the claim is exhausted because he relied on the same facts to challenge his trial counsel's effectiveness in his initial state post-conviction proceedings and his third state post-conviction proceedings and "the Nevada Supreme Court decided the claim on a basis that encompasses both theories." (ECF No. 186 at 79.)

This argument is without merit. The focus of the Nevada Supreme Court's decision was whether trial counsel was ineffective in presenting the evidence. (ECF No. 162-27 at 14). Claim 19(A) presents a different issue – *i.e.*, whether appellate counsel was ineffective by not seeking reversal due to the prejudicial impact of the evidence. Claim 19(A) is unexhausted.

Claim 19(B) – Leonard  alleges appellate counsel was ineffective in failing to raise the issue in Claim 4 regarding the special verdict form. (ECF No. 184 at 391-92.) Leonard argues the claim is exhausted because he presented a claim alleging trial counsel was ineffective for not objecting to the form, which the Nevada Supreme Court addressed on the merits, "deciding both the ineffectiveness claim and the standalone claim." (ECF No. 186 at 95.) The underlying claim addressed by the Nevada Supreme Court is different, however, than the substantive claim asserted in Claim 19(B). (ECF No. 162-27 at 17-18.) Claim 19(B) is unexhausted.

Claim 19(C) – As noted above, this claim alleges that appellate counsel was ineffective by not raising a claim of error regarding the improper admission of evidence of Leonard's philosophical writings as propensity evidence to show his guilt. (ECF No. 184 at 392-94.) Leonard does not dispute that he failed to fairly present this claim to the highest available state court. The claim is unexhausted.

Claim 19(E) – As noted above, this claim alleges that appellate counsel was ineffective by not raising certain guilt phase claims, in particular, the issues raised in Claims 5, 7, 8, and 11 of his first amended federal petition. (*Id.* at 394-95.) Respondents argue the claim is unexhausted as it relates to appellate counsel's failure to raise Claims 7(B), 8(B), and 11.

Here again, Leonard contends he exhausted the claim as it relates to Claim 7(B) by including it in a supplemental petition that was part of the record on appeal in his first state habeas proceeding. Because the claim was not included in his opening brief on appeal to the Nevada Supreme Court, it is unexhausted. (ECF No. 161-38.)

Leonard contends the claim as it relates to Claim 8(B) is exhausted because, even though his challenge to admission of Hill's letters was made within claims of ineffective assistance of trial counsel and judicial bias, the Nevada Supreme Court addressed Claim 8(B) "as a standalone challenge." (ECF No. 186 at 96.) This was not sufficient to exhaust. *See Rose*, 395 F.3d at 1112 ("While [the ineffective assistance and underlying

constitutional claim are] admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts.").

Lastly, the claim as it relates to Claim 11 is unexhausted for the same reason Claim 11 is unexhausted.

Claim 19(F) – As noted above, this claim alleges that appellate counsel was ineffective by not raising certain penalty phase claims, in particular, the issues raised in Claims 9, 10, 13, 14, and 18 of his first amended federal petition. (ECF No. 184 at 395-96.) Respondents argue the claim is unexhausted except as it relates to appellate counsel's failure to raise Claim 9(D).

In response, Leonard argues his initial state post-conviction petition, which included a claim that appellate counsel was ineffective for not effectively litigating the reasonable-doubt instruction, was included in his record on appeal to the Nevada Supreme Court. As discussed in footnote 14 above, this was not sufficient to effect exhaustion of the claim.

Leonard also notes that he challenged his penalty-phase instructions based on *Mills v. Maryland*, in his second state post-conviction proceedings. Once again, however, he did not present a claim that appellate counsel was ineffective by not raising such an argument. Leonard does not otherwise dispute that he did not fairly present Claim 19(F) to the Nevada Supreme Court. Thus, except for a claim that appellate counsel was ineffective by not adequately raising the argument in Claim 9(D), Claim 19(F) is unexhausted.

Claim19(G) – As noted above, this claim alleges that appellate counsel was ineffective by not raising the judicial bias claims set forth in Claims 12 and 15 of his first amended federal petition. (ECF No. 184 at 396.) Leonard argues that he exhausted at least part of this claim by including it in his third state post-conviction petition. However, the portions of the state court record Leonard cites to support this argument do not include

an ineffective assistance of appellate counsel claim premised on failure to raise a judicial bias argument. (ECF No. 186 at 99 (first citing ECF No. 165-26 at 78, then citing ECF No. 166-24 at 91-93)). Except for the portion of the claim faulting appellate counsel for not addressing the trial court's comment during voir dire disparaging Leonard's right not to testify (ECF No. 161-38 at 103-06), Claim 19(G) is unexhausted

Claim 20 – As noted above, this claim alleges that Leonard's conviction and sentence are invalid due to the cumulative errors in the admission of evidence and instructions, gross misconduct by State officials and witnesses, and the systematic deprivation of his right to the effective assistance of counsel. (ECF No. 184 at 397-99.) Leonard incorporates errors alleged throughout his federal petition. (Id. at 398.)

Leonard argues that he made references to cumulative error in his direct appeal and his third state post-conviction proceeding. Even so, Claim 20 is unexhausted to the extent that it incorporates claims not presented together in one or the other proceeding.

Leonard further argues that, regardless of whether or not the claim is exhausted, this Court "must separately consider the cumulative impact of any claims properly before it, in order to determine whether those errors had a substantial and injurious effect on the verdict." (ECF No. 186 at 100.) The Court reserves judgment on that issue until it rules upon the merits of claims not dismissed on procedural grounds.

a. Mandatory Review

Leonard argues that he has impliedly exhausted Claims 4, 6, 7, 8, 9, 10, 14, and 17 because, by statute, the Nevada Supreme Court was required to conduct a mandatory review of his sentence. When a death sentence has been entered, the Nevada Supreme Court must consider "[w]hether the evidence supports the finding of an aggravating circumstance or circumstances; [w]hether the sentence of death was imposed under the influence of passion, prejudice or any arbitrary factor, and [w]hether the sentence of death is excessive, considering both the crime and the defendant." NRS § 177.055.

In order to find claims exhausted by virtue of the Nevada Supreme Court's mandatory review, this Court must be satisfied that such review encompassed the specific factual and federal law grounds advanced by the petitioner in his federal petition. *See Comer v. Schriro*, 463 F.3d 934, 954-56 (9th Cir. 2006) (examining whether the petitioner's federal habeas claims were impliedly exhausted under the Arizona Supreme Court's statutory automatic review). In finding implied exhaustion in *Comer*, the court of appeals noted that only claims that are "clearly encompassed within Arizona's independent review" and "readily apparent from the record" will be deemed impliedly exhausted. *Id.* at 956. None of the claims Leonard identifies fit this description. Thus, none of Leonard's claims were exhausted by the Nevada Supreme Court's mandatory review of his death sentence. *See also Beam v. Paskett*, 3 F.3d 1301, 1307 (9th Cir. 1993), *overruled on other grounds in Lambright v. Stewart*, 191 F.3d 1181 (9th Cir. 1999) (en banc) (holding that the Idaho Supreme Court's mandatory review "necessarily" included the claim under consideration).

### b.  Futility and Absence of Effective Corrective Process

Leonard also argues that his failure to exhaust claims should be excused. First, he claims that for several of his claims, it would be futile for him to return to state court either because the state supreme court consistently or recently has rejected identical claims or because the state court's reasoning in rejecting his other claims make it virtually certain that the court will reject the unexhausted claim. This Court has long recognized that the alleged futility exception to exhaustion is practically a lifeless doctrine under Supreme Court and Ninth Circuit precedent. *See Kieren v. Nevada Atty. Gen.,* 2010 WL 1049288, at *9 (D. Nev. Mar. 18, 2010); *see also Alfaro v. Johnson*, 862 F.3d 1176, 1180-81 (9th Cir. 2017) (questioning but declining to rule upon the continued viability of the rule). Leonard has not demonstrated that the doctrine should be revived to excuse the exhaustion requirement for any of his claims.

Alternatively, Leonard argues his failure to exhaust should be excused under 28 U.S.C. § 2254(b)(1)(B)(i-ii), which applies when the State fails to provide an effective corrective process or when circumstances exist that render the corrective process ineffective. He bases this argument on allegations that trial counsel Saunders assisted him with preparing his initial state post-conviction petition, "then switched sides and filed a 'reply' to his supplemental petition, apparently on behalf of the State." (ECF No. 186 at 117.)

This Court is unable to discern the logic of this argument, in particular, how Saunders' filing served to deprive him of an effective corrective process. Even if it somehow tainted his initial state post-conviction proceeding, Leonard fails to explain why he was unable to exhaust his claims in his succeeding state proceedings.

### c. Leonard's Pending State Proceeding and Technical Exhaustion

According to Leonard, his fourth state post-conviction petition has been denied in the state district court but he is in the process of appealing that decision. Based on that, he asks the Court to either withhold its exhaustion ruling until that proceeding is concluded or find that claims in his pending state petition are technically exhausted but procedurally defaulted.

This Court's order granting an exhaustion stay in 2006 included an admonition that Leonard was to exhaust all his claims during the stay imposed by the order and ordered that, absent extraordinary circumstances, it would be the final opportunity for Leonard to return to state court to exhaust claims for habeas corpus relief. (ECF No. 89 at 4-5.) Leonard has not shown that additional delay in these proceedings to allow for exhaustion is warranted.

Leonard's request with respect to technical exhaustion is on more solid footing. "[I]f a claim is unexhausted but state procedural rules would now bar consideration of the claim, it is technically exhausted but will be deemed procedurally defaulted unless the petitioner can show cause and prejudice." *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir.

2011). As outlined below, the Nevada Supreme Court imposed procedural bars to Leonard's claims in his second and third state post-conviction proceedings.

Though Leonard's fourth state petition remains pending on appeal, the state district court denied that petition on procedural grounds as well and rejected Leonard's arguments that his defaults should be excused. (ECF No. 187-4.) In the absence of a showing that Leonard's unexhausted claims will not be procedurally barred by the Nevada Supreme Court, the anticipatory default doctrine applies to those claims.

### 3. Conclusion

Thus, based on the exhaustion analysis above, Claims 1(B)(1) (in part), 1(E), 1(I), I(L), 1(M), 1(O), 1(R)(2-4), 1(S), 1(T)(2-3), 3(B), 3(D), 3(E), 3(F) (in part), 3(H), 4, 6(B), 6(C), 7, 8, 9(A), 9(B), 10(A), 10(B), 11, 13, 14, 15, 16, 17, 18, 19(A), 19(B), 19(C), 19(E) (in part), 19(F) (in part), 19(G), and 20 (in part) are technically exhausted but subject to the procedural default doctrine.

### C.   PROCEDURAL DEFAULT

#### 1. Legal Standard

A federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). The Court in *Coleman* stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

A state procedural bar is "independent" if the state court explicitly invokes the procedural rule as a separate basis for its decision. *McKenna v. McDaniel*, 65 F.3d 1483,

1488 (9th Cir. 1995). A state court's decision is not "independent" if the application of a state's default rule depends on a consideration of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000). Also, if the state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit has held that the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003).

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted). A discretionary state procedural rule can serve as an adequate ground to bar federal habeas review because, even if discretionary, it can still be "firmly established" and "regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009). Also, a rule is not automatically inadequate "upon a showing of seeming inconsistencies" given that a state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule." *Walker v. Martin*, 562 U.S. 307, 320 (2011).

In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test for analyzing adequacy. Under *Bennett*, the State carries the initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Id.* at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.*

But, where the Ninth Circuit has "already made a determination regarding the adequacy of the state procedural rule, the petitioner's method of placing the defense in issue must be modified." *King v. LaMarque*, 464 F.3d 963, 967 (9th Cir. 2006). If the Ninth

Circuit has held a state procedural rule to be consistently applied, the petitioner must cite cases demonstrating subsequent inconsistent application. *See id.* On the other hand, if the Ninth Circuit has found a state procedural rule to be inadequate, "petitioners may fulfill their burden under *Bennett* by simply challenging the adequacy of the procedure." *Id.*

Assuming the petitioner has met his burden, "the ultimate burden" of proving the adequacy of the state bar rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Bennett*, 322 F.3d at 586.

### 2.  Analysis

Respondents contend that the doctrine of procedural default bars this Court from considering Claims 1(A), 1(B)(1) (in part), 1(B)(3), 1(G), 1(H), 1(J), 1(P), 3(A)(2)(a), 3(A)(2)(b), 3(F) (in part), 3(G), 3(J), 9(C), 12(B), 12(C), 12(E), 19(D), and 19(E) because the Nevada Supreme Court denied these claims presented in Leonard's second or third state petition as untimely under Nev. Rev. Stat. § 34.726 and barred by laches under NRS § 34.800.

#### a.  Adequacy and Independence

The Ninth Circuit has repeatedly rejected arguments that the Nevada Supreme Court has inconsistently applied NRS § 34.726 and has held the bar to be adequate to support application of the procedural default doctrine. *See Williams*, 908 F.3d at 579-80; *Loveland v. Hatcher*, 231 F.3d 640, 642-63 (9th Cir. 2000); *Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996). Leonard argues, however, that the bar is inadequate in his case because the Nevada Supreme Court has not regularly applied the timeliness bar to successive petitions.

In *Williams*, the Ninth Circuit recognized that, "[i]n 2001, the Nevada Supreme Court held for the first time that § 34.726 applies to petitioners who had already filed a petition for post-conviction relief prior to § 34.726's effective date" and "that petitioners seeking to file timely successive petitions had one year from § 34.726's effective date,

[January 1, 1993], in which to do so." *Williams*, 908 F.3d at 578 (citing to *Pellegrini v. State*, 34 P.3d 519 (Nev. 2001)). The court of appeals held that, even though *Pellegrini* did not notify Williams of the rule until long after his 1994 deadline had passed, § 34.726 was adequate to bar his federal court claims because Williams waited 15 months after *Pellegrini* to file his successive state petition. *See id*. Here, Leonard filed his successive state petition nearly five years after *Pellegrini*.

Notwithstanding the holding in *Williams*, Leonard argues that the Nevada Supreme Court has not regularly applied the bar to successive petitions relying on the cause and prejudice exception contained within the timeliness bar at NRS § 34.726(1), in particular, those alleging cause based on ineffective assistance of initial post-conviction counsel under *Crump v. Warden*, 934 P.2d 247 (Nev. 1997). In *Crump*, the Nevada Supreme Court held that where a petitioner is entitled to the appointment of post-conviction counsel pursuant to a statutory mandate, the ineffective assistance of that counsel may provide good cause under NRS 34.810(1)(b) for the failure to present claims for relief in a prior postconviction petition for a writ of habeas corpus. *See* 934 P.2d at 254. According to Leonard, it was only after he filed his second and third state petitions that he was notified of his deadline to file his successive petition asserting ineffective assistance of post-conviction counsel as cause. He points to the Nevada Supreme Court's decision in *Rippo v. State*, 368 P.3d 729 (2016), which set the deadline at one year from the conclusion of post-conviction proceedings in which the ineffective assistance allegedly occurred. *See Rippo*, 368 P.3d at 739, *vacated on other grounds by Rippo v. Baker*, 580 U.S. ——, 137 S. Ct. 905 (2017).

This argument is defective in two respects. First, Leonard did not have a statutory right to post-conviction counsel in his initial state habeas proceeding because the relevant statute did not apply to post-conviction proceedings commenced before January 1, 1993. *See Mazzan v. Whitley*, 921 P.2d 920, 921 n.1 (Nev. 1996). Second, and more to the point, Leonard waited seven years after the conclusion of his first state habeas

proceeding to file his second. Even before the guidance provided by *Rippo*, Howard could not have reasonably believed that the Nevada courts would excuse such a delay based on a claim that he received ineffective assistance of counsel in his prior post-conviction proceeding. *See Hathaway v. State*, P.3d 503, 507-08 (Nev. 2003) (petitioner must file his post-conviction petition asserting ineffective assistance of counsel as cause for default within a reasonable time).

Leonard's arguments do not place the adequacy of NRS § 34.726 at issue so as to shift the burden to Respondents. Accordingly, the Court concludes the provision was a "clear, consistently applied, and well-established" procedural rule at the time of Leonard's defaults.

As with the timeliness bar under § 34.726, the Ninth Circuit has also affirmed the adequacy of the laches bar under NRS § 34.800. *See Ybarra v. McDaniel*, 656 F.3d 984, 990 (9th Cir. 2011). As the court in *Ybarra* noted, however, "a petitioner can show that a rule deemed adequate in one case is inadequate as to his case because it was not consistently or regularly applied at the time of his particular default." *Id.* But, because the rule expressly requires the State to specifically plead the laches defense, Leonard needs to show that "the Nevada court has declined to apply the rule even when the State so pleads." *Id.* n.2.

Here, Leonard's default under § 34.800 occurred in 1997, five years after the Nevada Supreme Court's denial of his direct appeal. *Ybarra* recognized the adequacy of the rule as of 1992. *See* 656 F.3d at 990. Leonard cites to several Nevada Supreme Court decisions that he claims show inconsistent application of the bar. (ECF No. 186 at 146-49.) All of those decisions were issued, however, long after Leonard's default, and nearly all of them were issued after the Nevada Supreme Court applied the bar to his case.

Leonard also argues that the Nevada Supreme Court has been inconsistent in articulating the requirements for overcoming the laches bar. For example, he contends that the state supreme court's decisions are unclear as to whether a showing of cause

and prejudice will permit a petitioner to avoid the laches bar. Leonard has not shown, however, that the Nevada Supreme Court has "exercised its discretion in a surprising or unfair manner." *Walker*, 562 U.S. at 320. Thus, Leonard has again not met his burden so as to shift the burden to Respondents. NRS § 34.800 was an adequate procedural rule at the time of his defaults.

Apart from the adequacy of the rules, Leonard contends that the Nevada courts' application of default bars to Claim 1(H) and Claim 9(C) was intertwined with federal law so the claims were not defaulted under an "independent" state rule. For Claim 9(C), which alleges trial court error for not issuing proper instructions on unanimity in the penalty phase, Leonard cites to the Nevada Supreme Court's determination in his second state habeas proceeding that the jury instructions in his case did not violate *Mills v. Maryland*, 486 U.S. 367 (1988), because it had so held with respect to the same instructions in a prior case. (ECF No. 165-7 at 6-7.)

The state supreme court made that determination, however, in the context of rejecting Leonard's argument that he could overcome procedural bars because their application would result in a fundamental miscarriage of justice. When a state court determines that a state procedural bar applies, but looks at the merits of the federal constitutional claim for the purpose of determining whether the petitioner can overcome the procedural bar, the state court's application of the bar is not considered to be intertwined with the merits of the federal claim such as to deprive the state procedural bar of its independence. *See Moran*, 80 F.3d at 1269.

For Claim 1(H), which alleges IAC for failure to retain experts to support lack of specific intent, Leonard cites to the Nevada Supreme Court's decision rejecting his actual innocence argument in his third state habeas proceeding. There, the state supreme court determined that the "new mental health evidence" Leonard presented did not demonstrate that "it was more likely than not that no reasonable juror would convict him of first-degree

murder." (ECF No. 166-33 at 6.) Not only did the Nevada Supreme Court not address the IAC claim in Claim 1(H), its decision did not depend on consideration of federal law.

Thus, Leonard defaulted the claims in his second and third state habeas petitions pursuant to independent and adequate state procedural rules. This Court is barred from reviewing any claim presented for the first time in either proceeding, absent a showing of cause and prejudice or a fundamental miscarriage of justice. The same applies to claims Leonard has yet to exhaust as discussed above.

### b. Cause and Prejudice

Relying on *Martinez v. Ryan*, 566 U.S. 1 (2015), Leonard alleges post-conviction counsel's ineffective representation provides cause sufficient to excuse his failure to comply with Nevada's procedural rules. In *Martinez*, the Supreme Court noted that it previously held in *Coleman*, 501 U.S. at 746-47, that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse procedural default. *Martinez*, 566 U.S. at 15. The Court in *Martinez* "qualif[ied] *Coleman* by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id.* at 8. "The holding in [*Martinez*] does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 16. Also, *Martinez* cannot serve to excuse the default of any claim that is not an ineffective assistance of trial counsel claim. *See Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017) (expressly declining to extend the *Martinez* exception to allow federal courts to consider ineffective assistance of appellate counsel claims).

Rather than focus on the particular trial IAC claims Respondents claim are procedurally defaulted – *i.e.*, Claims 1(A), 1(B)(1) (in part), 1(B)(3), 1(G), 1(H), 1(J), 1(P), 3(A)(2)(a), 3(A)(2)(b), 3(F) (in part), 3(G), and  3(J), Leonard contends Claims 1 and 3 "are subject to application of procedural default *in their entirety*, and [he] must be given the opportunity to establish cause under *Martinez* to overcome any procedural default resulting from these claims." (ECF No. 186 at 121-22 (emphasis added) (citing *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014).) In other words, Leonard asks that the Court apply *Martinez* to Claims 1 and 3, each as unified whole, with the obvious benefit to Leonard being that the Court would then consider the two broad claims de novo. Such an approach runs contrary to established Ninth Circuit precedent.

"As a general matter, each 'unrelated alleged instance [ ] of counsel's ineffectiveness' is a separate claim for purposes of exhaustion." *Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013) (quoting *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005)); *but see Sanders v. Ryder*, 342 F.3d 991, 1001 (9th Cir. 2003) (separate errors by counsel at trial and at sentencing "are … not separate claims, but rather different aspects of a single claim of ineffective assistance of trial counsel"). Based on *Moorman*, the court in *Gulbrandson* determined that, although both claims alleged ineffective assistance related to an expert's testimony at sentencing, an IAC claim alleging ineffectiveness for not presenting the expert's opinions about Gulbrandson's state of mind at the time of the crime was, for exhaustion and procedural default purposes, a separate claim from an IAC claim based on counsel's failure to recall the same expert to testify about Gulbrandson's potential for rehabilitation. *See id.* at 993.

To the extent Leonard relies on *Dickens* for his position, the Court remains unpersuaded. In *Dickens*, the petitioner presented the federal court with a *Strickland*[16]

---

[16]*Strickland v. Washington*, 466 U.S. 668 (1984), is the Supreme Court case that supplies the standard for determining whether counsel's conduct deprived a criminal defendant of his or her constitutional right to effective assistance of counsel.

claim based on sentencing counsel's failure to uncover mitigating evidence which petitioner supported with "extensive factual allegations suggesting [he] suffered from FAS and organic brain damage." *Dickens*, 740 F.3d at 1317. The court held that the "new allegations and evidence Dickens presented to the federal district court fundamentally altered Dickens's previously exhausted IAC claim," which was a "naked *Strickland* claim" that "only generally alleged that sentencing counsel did not effectively evaluate whether Dickens 'suffer[ed] from any medical or mental impairment.'" *Id*. at 1319. Nowhere does the decision suggest that, notwithstanding Leonard's presentation of numerous, well-supported IAC claims to the Nevada courts (ECF No. 159-17), this Court must now treat Claims 1 and 3 as new IAC claims, each subject to procedural default analysis as a single unified claim. In fact, the *Dickens* court rejected such a notion: "Because courts evaluate procedural default on a claim-by-claim basis, it follows that *Martinez* would allow a petitioner to show cause, irrespective of the presence of other, separate claims." *Dickens*, 740 F.3d at 1321.

Thus, if Leonard wants to show cause based on *Martinez*, he must do so on a claim-by-claim basis, with each claim defined at the level of particularity exemplified by *Gulbrandson. See also Bell v. Cone*, 535 U.S. 685, 697-98 (2002) (IAC claims under *Strickland* are focused on "specific attorney errors"). In addition, this Court reserves judgment as to whether *Martinez* can serve to excuse the default of any of his claims given the circumstances presented here, most notably, the fact that Leonard filed his defaulted second state habeas proceeding 14 years after his conviction became final and seven years after the conclusion of his first state habeas proceeding. Even more problematic are trial counsel IAC claims that remained unexhausted after Leonard's second and third state habeas proceeding. It is difficult to conceive how the default of those claims could be attributed to ineffective assistance of counsel in Leonard's first state habeas proceeding. *See Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1289 (9th Cir. 2013) ("The Supreme Court in *Martinez* established an equitable rule under which the failure of

an ineffective counsel or pro se petitioner to raise, in a state court initial-review collateral proceeding, a claim of ineffective assistance of counsel ('IAC') at trial can be 'cause' to excuse a state-court procedural default.").

Next, Leonard argues he can overcome the procedural default for Claims 4, 6, 7(A), 8(A), 8(B), 9(A), 9(D), and 10(B), because they are standalone claims that were pled as ineffectiveness claims in his first state post-conviction proceedings.[17] Given his citation to *Edwards v. Carpenter*, 529 U.S. 446, 450-54 (2000), Leonard appears to be arguing that attorney error in his trial or direct appeal proceedings serves as cause for the procedural default of these claims.

As Respondents point out, this argument fails for Claims 6, 9(A), and 10(B), because even if Leonard presented the related IAC claim to the state district court, he did not present it to the Nevada Supreme Court. *See Edwards*, 529 U.S. at 452 (claim of ineffective assistance must be exhausted as an independent claim before it may be used to establish cause for a procedural default (citing *Murray v. Carrier*, 477 U.S. 478, 489 (1986)).

While Leonard did allege that trial counsel was ineffective in failing to object to the special verdict form, Claim 4 challenges the form on much broader grounds than that argued in relation to Leonard's trial IAC claim. (ECF Nos. 161-38 at 94-97, 184 at 277-279.) Likewise, as noted above, Leonard's trial IAC claim based on the "lying in wait" instruction, the instruction that is the subject of Claim 7(A), challenges the instruction only on state law grounds. (ECF No. 161-38 at 65-68.) And, in advancing the trial IAC claims related to the admission of the alleged murder weapon and the letters purportedly written by Don Hill, Leonard did not, in either instance, allege that the trial court's admission of the evidence constituted a violation of his federal right to due process as alleged in Claim 8(A) and Claim 8(B). (ECF No. 161-38 at 34-39, 43-47.)

---

[17]As discussed above, the Nevada Supreme Court addressed Claim 9(D) on the merits so it is not procedurally defaulted.

Lastly, Leonard claims that the Nevada Supreme Court's imposition of an unduly restrictive page limit constituted an external factor that prevented him from including his defaulted claims in his appellate brief. *See Carrier*, 477 U.S. at 488 (holding that petitioner can establish cause by showing "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule"). Prior to Leonard seeking an exhaustion stay in 2006, this Court rejected the same argument as an excuse for lack of exhaustion. (ECF No. 86 at 11.) For the same reasons, the argument is without merit as cause for Leonard's procedural defaults.

### c.  Fundamental Miscarriage of Justice

Leonard again poses the actual innocence arguments discussed above in relation to timeliness. The same analysis and result apply with respect to his attempt to avoid procedural default.

### d.  Additional Arguments

Leonard claims he did not procedurally default Claim 9(B) or Claim 18 because the legal basis for these claims—*Hurst v. Florida*, 136 S. Ct. 616 (2016)—was not available earlier. This argument is without merit. If *Hurst* did establish a new rule not previously available, as Leonard claims, the rule would not apply retroactively in cases like this one on collateral review. *See Williams v. Filson*, 908 F.3d 546, 581 (9th Cir. 2018).

And Leonard again seeks relief based on his allegation that trial counsel Saunders assisted him with preparing his initial state post-conviction petition, "then switched sides and filed a 'reply' to his supplemental petition, apparently on behalf of the State." (ECF No. 186 at 165-66.) Leonard does not explain, however, how Saunders prevented him from presenting particular claims to the Nevada courts in compliance with Nevada's procedural rules.

### 3.  Conclusion

In summary, Leonard has not demonstrated the procedural default of his claims should be excused. As discussed above, Leonard's procedurally defaulted claims include

those presented for the first time in his second or third state habeas proceeding and those for which he has yet to exhaust state court remedies. Accordingly, the following claims are procedurally defaulted: Claims 1(A), 1(B)(1), 1(B)(3), 1(E), 1(G), 1(H), 1(I),  1(J), I(L), 1(M), 1(O), 1(P), 1(R)(2-4), 1(S), 1(T)(2-3),  3(A)(2)(a), 3(A)(2)(b), 3(B), 3(D), 3(E), 3(F) (in part),[18] 3(G), 3(H), 3(J), 4, 6(B), 6(C), 7, 8, 9(A), 9(B), 9(C), 10(A), 10(B), 11, 12(B), 12(C), 12(E), 13, 14, 15, 16, 17, 18, 19 (in part),[19] and 20 (in part).

### D.   COGNIZABILITY/RIPENESS

Respondents assert that Claims 8 (in part), 10(A), 12(D) (in part), 12(E) (in part), and 13 are not cognizable in a federal habeas proceeding. Respondents also contend Claims 13 and 16 must be dismissed because they are not ripe for federal habeas review.

Claims 8 (in part) and 10(A) allege errors involving state law evidentiary issues. Respondents are correct that "[s]imple errors of state law do not warrant federal habeas relief." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). The claims also allege, however, a violation of Leonard's federal right to due process, which is cognizable in federal habeas. *See id*. Thus, the claims will not be dismissed on cognizability grounds.

Respondents are correct that Claims 12(D) and 12(E) are not cognizable to the extent they alleged errors arising from Leonard's state post-conviction proceeding. *See Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989) ("A petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings.").

---

[18]The only portion of Claim 3(F) not procedurally defaulted is the allegation that counsel was ineffective by failing to challenge the executive clemency instruction, which was presented to the Nevada Supreme Court in Leonard's first state habeas proceeding. (ECF No. 161-38 at 89-94.)

[19]The only portions of Claim 19 not procedurally defaulted are appellate counsel's failures in relation to the "lying in wait" instruction (19(E)), the executive clemency instruction (19(F)), and the trial court's comment during voir dire disparaging Leonard's right to not testify (19(G)).

The portions of those claims premised on allegations related to state post-conviction proceedings cannot be considered as grounds for habeas relief.

Claim 13 challenges the constitutionality of execution by lethal injection. Respondents argue the claim is not cognizable "to the extent Leonard challenges the specific protocol employed by the Nevada Department of Corrections." (ECF No. 151 at 55.) As a district judge in this district recently explained, based on the Supreme Court's holdings in *Nelson v. Campbell*, 541 U.S. 637 (2004), and *Hill v. McDonough*, 547 U.S. 573 (2006), "a challenge to a state's execution protocol is more akin to a suit challenging the conditions of custody, which must be brought as a civil rights action under 42 U.S.C. § 1983." *Nika v. Gittere*, No. 3:09-cv-00178-JCM-WGC, 2019 WL 2453658, at *58 (D. Nev. June 12, 2019). Thus Claim 13, as it applies to Nevada's protocol, is not cognizable in this federal habeas corpus action and will be dismissed on that basis. Accordingly, the Court need not address Respondents' argument that that aspect of the claim is not ripe for review.

In Claim 16, Leonard alleges his conviction and sentence are unconstitutional under *Ford v. Wainwright*, 477 U.S. 399, 410 (1986), because he may become incompetent to be executed. (ECF No. 184 at 379.) A claim of incompetency for execution raised in a first habeas petition "must be dismissed as premature due to the automatic stay that issues when a first petition is filed." *Martinez–Villareal v. Stewart*, 118 F.3d 628, 634 (9th Cir. 1997). If this court denies relief, Leonard may bring the claim again without it being treated as a second or successive petition. *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 643-44 (1998); *Panetti v. Quarterman*, 551 U.S. 930, 947 (2007). Therefore, the Court will dismiss Claim 16, without prejudice, as premature.

## IV.   MOTIONS FOR DISCOVERY AND EVIDENTIARY HEARING

Leonard's motions for leave to conduct discovery and an evidentiary hearing ask that he be permitted to develop evidence in support of his arguments for cause and prejudice under *Martinez*, actual innocence, and equitable tolling. (ECF Nos. 188, 190.)

Leonard seeks discovery to support his claims of actual innocence and ineffective assistance of post-conviction counsel under *Martinez*. Rule 6 of the Rules Governing Section 2254 cases provides that, for good cause, the court may "authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (stating that a party to a habeas corpus proceeding may utilize the discovery tools available under the Federal Rules of Civil Procedure, if the court grants leave to do so for "good cause shown"). Thus, when "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). However, "courts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation." *Calderon v. United States District Court (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996).

For his actual innocence claim, Leonard proposes a lengthy list of records and documents for Respondents to produce and identifies four people he wants to depose. (ECF No. 190 at 6-12.) According to the Leonard, this information will assist him in establishing that the State was complicit in either staging or negligently allowing the fight between Leonard and Wright. As explained above, however, proof that correctional officers allowed the fight to occur does not equate to a finding that Leonard is actually innocent. So, even assuming such evidence exists, it does not meet *Schlup*'s high standard and does not establish a claim of actual innocence.

For his *Martinez* arguments, Leonard proposes another list of records and documents for the State to produce, mostly related to crime scene investigator Jeff Cotter, and also seeks to depose Cotter, trial counsel Saunders, and David Sarnowski, the lead prosecutor in Leonard's case. (ECF No. 190 at 14-16.) Cotter, employed by the Carson City Sheriff's Department at the time of the murder, testified at Leonard's trial about his

investigation of the crime scene, which included taking photographs and collecting physical evidence. (ECF No. 155-5 at 5-103.) Cotter also testified about witnessing, photographing, and collecting evidence at Wright's autopsy, as well as returning to the prison to collect a weapon that had been removed from a sewer trap. (*Id.*)

As noted above, Leonard alleges, in Claim 1(L) of his petition, that trial counsel were ineffective for failing to litigate the issue of Cotter's competency or otherwise impeach his testimony. (ECF No. 184 at 119-27.) In addition to being procedurally defaulted, the claim is also time-barred. *Martinez* does not provide a method for overcoming that hurdle. *See Lambrix v. Sec'y, Florida Dept. of Corr.*, 756 F.3d 1246, 1249 (11th Cir. 2014) (*Martinez* "has no application to the operation or tolling of the § 2244(d) state of limitations for filing a § 2254 petition"). Moreover, Leonard's factual allegations in support of Claim 1(L) are already well-supported by his proffered evidence. He has not shown that the discovery of additional evidence would assist him in strengthening his claim.

Leonard does not otherwise specify how discovery might assist his actual innocence or *Martinez* arguments. Accordingly, the Court denies his motion for discovery.

Leonard asks for an evidentiary hearing to support his claim of actual innocence and his equitable tolling argument.[20] Because Leonard seeks an evidentiary hearing on procedural issues, the restrictions imposed by 28 U.S.C. § 2254(e)(2) do not necessarily apply to his request. Even so, in order to be entitled to an evidentiary hearing, Leonard must allege facts which, if true, would entitle him to relief. *See, e.g.*, *Mendoza v. Carey*, 449 F.3d 1065, 1071 (9th Cir. 2006). "If the record refutes the applicant's factual

---

[20]Leonard's initial motion also asks for an evidentiary hearing to establish cause and prejudice under *Martinez*. (ECF No. 188 at 4-6.) Respondents maintain that the Court should defer ruling on that request until they file an answer. (ECF No. 201 at 2.) Leonard does not oppose that suggestion in his reply. (ECF No. 204.) And, as discussed above, Leonard has yet to properly frame his *Martinez* arguments. Thus, the Court denies that portion of the motion without prejudice to Leonard renewing it at the appropriate time.

allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *West v. Ryan*, 608 F.3d 477, 485 (9th Cir. 2010) (internal quotations omitted). Leonard's claims with respect to both actual innocence and equitable tolling are discussed and rejected above. Given the Court's analysis, Leonard does not identify a fact or facts that, if proven, would entitle him relief. Thus, his motion for an evidentiary hearing is denied.

## V.    CONCLUSION

It is therefore ordered that Respondents' motion to dismiss (ECF No. 151) in response to Petitioner's first amended petition for writ of habeas corpus (ECF No. 138/184) is granted in part and denied in part. The following claims in the petition are dismissed for the reasons discussed above: Claims 1(A), 1(B)(1), 1(B)(3), 1(E), 1(G), 1(H), 1(I),  1(J), I(L), 1(M), 1(O), 1(P), 1(R)(2-4), 1(S), 1(T)(2-3), 3(A)(1)(d), 3(A)(2)(a), 3(A)(2)(b), 3(B), 3(D), 3(E), 3(F) (in part), 3(G), 3(H), 3(J), 4, 6(B), 6(C), 7, 8, 9(A), 9(B), 9(C), 10(A), 10(B), 11, 12(B-E), 13, 14, 15, 16, 17, 18, 19 (in part), and 20 (in part). In all other respects, Respondents' motion to dismiss is denied.

It is further ordered that Respondents must file an answer within 120 days from the entry of this order responding to the remaining claims in Petitioner's first amended habeas corpus petition.

It is further ordered that Petitioner's motion for evidentiary hearing (ECF No. 188) and motion for discovery (ECF No. 190) are denied.

It is further ordered that, in all other respects, the scheduling order of December 28, 2016 (ECF No. 120), continues to govern proceedings in this case.

DATED THIS 14th day of May 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE